IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIRST LOOK INSTITUTE, INC. and TRAVIS MANNON,<br><br>                    Plaintiffs,<br><br>    -against-<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>                    Defendant. | Case No. 21 Civ. 7052<br><br>**COMPLAINT** |

Plaintiffs Travis Mannon and First Look Institute, Inc., publisher of *The Intercept*, by and through their undersigned attorneys, Emery, Celli, Brinckerhoff, Abady, Ward, and Maazel LLP, allege:

**PRELIMINARY STATEMENT**

1. This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq.*, by Travis Mannon and First Look Institute, Inc. (collectively "FLI"). First Look Institute, Inc. is the non-profit publisher of *The Intercept,* an American news site that seeks to provide the public with original, independent journalism concerning the institutions and individuals responsible for shaping our world. Mr. Mannon is a video producer for *The Intercept*. FLI brings this action to seek the release of public agency records from the U.S. Department of Homeland Immigration and Customs Enforcement ("ICE").

2. Through this action, FLI seeks to compel ICE to produce "all video and audio recordings in connection with the force-feeding of former detainee Ajay Kumar at the El Paso Service Processing Center," requested by Mr. Mannon on behalf of FLI under FOIA (the "Requested Footage"). Jan. 14, 2020 FOIA Request (the "Request," "Exhibit A"). The Request

attached a signed waiver from Mr. Kumar of his privacy rights. ICE denied the Request on the grounds that its search failed to uncover responsive records. Feb. 24, 2020 FOIA Denial (the "Denial," "Exhibit B"). However, the Denial was based on a patently unreasonable search. ICE apparently did not search for records from the El Paso Service Processing Center ("El Paso SPC"), though ICE owns and operates that facility. The Denial stated that any responsive records would be located at El Paso SPC yet inexplicably did not have its search cover that facility. Given that the "FOIA" page of the El Paso SPC's website directs all FOIA requests to ICE headquarters in Washington, D.C.,[1] ICE's failure to search records within the El Paso SPC's "purview" was wholly unreasonable.

3.  In its response to FLI's administrative appeal, ICE appeared to agree that is search was unreasonable, noting that "a new search(s), or modifications to the existing search(s), could be made." *See* FLI's administrative appeal ("Administrative Appeal," "Exhibit C"); ICE's response to the Administrative Appeal ("Appeal Determination," "Exhibit D"). ICE remanded the matter for a new search for responsive records *over fifteen months ago*. Ex. D. Subsequently, however, Mr. Mannon never received any communications pertaining to the request. FLI attempted to resolve this matter in mediation, but never heard back from the Office of Government Information Services despite repeated follow-up efforts. This pattern of delay violates FLI's rights under FOIA and, in doing so, impede FLI's efforts to inform the public about a matter of considerable public concern.

4.  The Requested Footage captures multiple force-feeding procedures that medical staff at the El Paso SPC performed on asylum seeker Ajay Kumar over the course of Mr.

---

[1] *U.S. Immigration and Customs Enforcement*, "El Paso Service Processing Center," "FOIA" tab, (last updated: June 10, 2021; last accessed: Aug. 16, 2021) https://www.ice.gov/detain/detention-facilities/el-paso-service-processing-center.

Kumar's 72-day hunger strike in protest of his detention at the El Paso SPC. *See In re Kumar*, 402 F.Supp. 3d 337, 379-381 (W.D. Tex. 2019) (mem. op.); *In re Kumar*, Case 3:19-mc-00205-FM, Mot. to Dissolve Orders of Auth. and Mot. to Close Case, Ex. A, "Declaration of [redacted]," ¶ 7 (Sept. 26, 2019) ("Exhibit E").

5. The public needs this footage to comprehend the brutality of ICE's force-feeding procedures. On knowledge and belief, no video of ICE force-feeding its detainees has been published. The public's interest in witnessing ICE's force-feeding practices is exceptionally strong, especially given that they likely constitute torture in violation of international law, according to the United Nations' Office of the High Commissioner for Human Rights.[2]

6. FLI has a good faith basis to believe that the Requested Footage exists and can be located by ICE. The 2011 Operations Manual ICE Performance-Based National Detention Standards, which governs El Paso SPC, required ICE to audiovisually record all force-feeding procedures performed on Mr. Kumar.[3] Moreover, Mr. Kumar's court testimony confirmed that the procedures were in fact recorded. *See In re Kumar*, Em. Mo. Hearing Transcript, at 62 (Aug. 19, 2019) ("Exhibit G"). Moreover, pursuant to the PBNDS, "[e]ach audiovisual record shall be catalogued and preserved until no longer needed, but *shall be kept no less than six years* after its last documented use." PBNDS § 2.15 (V)(K), Ex. F (emphasis added). These records must be catalogued in a manner that allows them to be easily located by searching for a date or detainee's

---

[2] Garance Burke, "UN: US Force-Feeding Immigrants May Breach Torture Agreement," *Associated Press* (Feb. 7, 2019) https://apnews.com/article/e0941d7d1b0d413b9d9a0b792c34dd26.

[3] Immigration and Customs Enforcement, Operations Manual ICE Performance-Based National Detention Standards (rev. July 2016) ("PBNDS"), § 2.15(V)(I)(2), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf. Section 2.15 of the PBNDS is excerpted and attached hereto as "Exhibit F."

name. *Id.* Assuming that the agency complied with the PBNDS, ICE can locate the Requested Footage with minimal, if any, disruption to its ordinary operations.

7. FOIA guarantees the public's right to "access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973). The controversial nature of non-consensual force-feeding procedures renders the footage "precisely the kind of event that should be opened to the fullest possible disclosure consistent with legitimate [countervailing] interests[.]" *Id.* at 94 (Stewart, J., concurring).

8. FOIA therefore entitles Mr. Mannon to the video records he requested. This suit simply endeavors to enforce that right.

## PARTIES

9. Plaintiff First Look Institute, Inc. is a not-for-profit American news organization that owns and operates several journalistic outlets, including *The Intercept*. Its headquarters are at 114 5th Avenue, New York, NY 10011. First Look Institute, Inc. is dedicated to furthering the public interest by standing up for press freedoms and fostering fearless, adversarial journalism. It publishes *The Intercept*, an award-winning, nationally recognized news organization with a reputation for holding power to account. *The Intercept*'s in-depth investigations focus on politics, war, immigration, surveillance, corruption, the environment, technology, criminal justice, and the media. It gives its journalists the editorial freedom and legal support to expose corruption and injustice.

10. Plaintiff Travis Mannon is a video producer employed by *The Intercept*, a publication of First Look Institute, Inc. He develops, produces, and edits visual investigations centered on immigration, criminal justice, national security, and politics. He earned a master's

degree from the New York University Arthur L. Carter Journalism Institute's Studio 20: Digital First program, where he studied media innovation in the digital age.

11. Defendant ICE is an agency of the federal government that has possession, custody and/or control of the records that FLI seeks. ICE is headquartered at 500 12th Street SW, Washington, DC 20536. ICE has direct authority to coordinate and execute U.S. "efforts to strengthen border security and prevent the illegal movement of people, goods, and funds into, within, and out of the United States."[4]

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action and personal jurisdiction over the U.S. Immigration and Customs Enforcement, within the Department of Homeland Security, pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

13. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

14. Plaintiffs are deemed to have exhausted all administrative remedies because they filed, and ICE responded to, an administrative appeal of the constructive denial of the FOIA request.

## FACTS

15. FOIA "focuses on the citizens' right to be informed about 'what their government is up to,'" by fostering the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant

---

[4] U.S. Immigration and Customs Enforcement, "ICE's Mission" (Feb. 11, 2021) https://www.ice.gov/about-ice.

objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

16.     *The Intercept*, like other news publications, plays a critical role in providing information to citizens about "what their government is up to." Indeed, the First Amendment's guarantee of freedom of the press is meant to enable journalists to play an "essential role in our democracy," to "bare the secrets of government and inform the people." *N.Y. Times Co. v. U.S.,* 403 U.S. 713, 717 (1971) (Black, J., concurring).

17.     Through the FOIA request at issue in this case, FLI seeks to fulfill its journalistic function and shine a public light on a dangerous and controversial medical procedure employed by ICE, namely, its use of force-feeding procedures on hunger-striking detainees.

18.     On January 14, 2020, *Intercept* video producer Travis Mannon submitted a FOIA request (the "Request") to ICE. Ex. A. The Request was assigned the tracking number 2020-ICFO-21851. The Request sought: "all video and audio recordings in connection with the force-feeding of former detainee Ajay Kumar at the El Paso Service Processing Center. According to official ICE medical use of force assessment documents and court records, Kumar was force-fed from August 14, 2019 through September 5, 2019, but we also request any and all footage related to Kumar's force-feeding that falls outside of this date range." Ex. A.

19.     Attached to the Request was ICE Form 60-001 (2/11) (the "Privacy Waiver") by which Mr. Kumar waived his rights under the Privacy Act of 1974, 5 U.S.C. § 552 (a) and authorized ICE to release "ALL information and/or Records Requested by the Recipient" (i.e. Mr. Mannon). *See* Ex. A, at 4-5 (emphasis original).

20.     Mr. Kumar and a witness, Nathan Craig, signed the Privacy Waiver on Dec. 20, 2019.

6

21. This waiver precludes the application of any FOIA exemptions designed to safeguard Mr. Kumar's privacy, such as 5 U.S.C. § 552 (b)(6) ("Exemption 6"). Exemption 6 protects medical files from disclosure "[t]o the extent required to prevent a clearly unwarranted invasion of privacy[.]" 5 U.S.C. § 552 (b)(6).

22. On February 24, 2020, ICE issued a final response to Mr. Mannon's request, constructively denying it in full. Ex. B. The letter stated that the agency had "conducted a search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to [the R]equest and no records responsive to [the R]equest were found. If any records responsive to [the R]equest exist, they would be under the purview of the detention facility."

23. ICE owns and operates the El Paso SPC.

24. The FOIA section of the website for the El Paso SPC instructs requestors to submit requests to ICE's Freedom of Information Act Office.[5]

25. The FOIA section of the website for the El Paso SPC does not contain any information for a facility-specific FOIA office.

26. ICE is therefore responsible for processing FOIA requests for records in the purview of this facility.

27. On March 23, 2020, Mr. Mannon's counsel submitted an administrative appeal of this denial (the "Administrative Appeal").

28. The Administrative Appeal primarily argued that ICE failed to conduct a legally adequate search for the requested records. Ex. C. It was assigned the tracking number 2020-ICAP-00265. The Administrative Appeal argued that, given the evidence that ICE made

---

[5] *U.S. Immigration and Customs Enforcement*, "El Paso Service Processing Center," "FOIA" tab, (last updated: June 10, 2021; last accessed: Aug. 16, 2021) https://www.ice.gov/detain/detention-facilities/el-paso-service-processing-center.

recordings of the force-feeding incidents, "it strains credulity to believe that the ICE can find no video or audio recordings documenting these incidents." The Administrative Appeal further challenged the Denial's supposition that any responsive records "would be under the purview of the detention facility." It argued that because "the El Paso Service Processing Center is owned and operated by DHS," ICE appeared to be "referring [Mr. Mannon] to the detention facility that is run by ICE itself[,]" and that [i]t is patently unreasonable for the agency to summarily opine that there are no responsive records." The Administrative Appeal concluded that ICE "constructively denied" the Request by "failing to conduct a reasonable search for requested records[.]"

29. ICE issued a final determination in response to the Administrative Appeal on April 29, 2020 (the "Appeal Determination"). Ex. D. In the Appeal Determination, ICE informed Mr. Mannon that "[u]pon a complete review of the administrative records and the search documentation, ICE has determined that a new search(s), or modifications to the existing search[s] could be made. ICE is therefore remanding your appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive records."

30. More than fifteen months later, Mr. Mannon has yet to receive any further communication from ICE as to the status of this Request on remand, including whether ICE was able to locate any responsive documents.

31. This unreasonable delay constitutes a constructive denial of the Request.

32. A reasonable search would have uncovered responsive documents, so long as ICE complied with PBNDS § 2.15.

33. PBNDS § 2.15 requires that ICE audio visually record "calculated use of force" incidents, store those recordings for a minimum of six years, and catalogue the recordings so that they can be searched by name and date. PBNDS § 2.15(V)(I)(2), (V)(K), Ex. F.

34. Medical records documenting Mr. Kumar's "Use of Force Medical Assessment" demonstrate that the force-feeding procedures constituted calculated use of force incidents.

35. As such, ICE was required to audio visually record them and retain the recordings.

36. Mr. Kumar's testified that an officer holding a camera attended his force-feeding procedures.

37. Mr. Kumar's testimony evidences that ICE complied with PBNDS § 2.15 by making audiovisual records of the procedures.

38. Because the force-feeding incidents in question took place in 2019, less than six years ago, audiovisual records of these procedures should still exist consistent with PBNDS § 2.15(V)(K).

39. ICE should be able to easily find the Requested Footage by searching the El Paso SPC's calculated use of force audiovisual records for the name "Ajay Kumar."

40. ICE did not "'ma[k]e a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Whitaker v. DOC*, 970 F.3d 200, 206-07 (2d Cir. 2020) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (1990)).

41. The PBNDS required that the El Paso SPC maintain the Requested Footage, and ICE acknowledged in the Denial that any extant responsive records "would be under the purview of the detention facility."

42. As a result, excluding El Paso SPC records from its search cannot have been "'reasonably calculated to discover the requested documents.'" *Kuzma v. United States DOJ*, 692 F. App'x 30, 32 (2d Cir. 2017) (quoting *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999)). ICE therefore failed to discharge its obligation under FOIA to conduct an adequate or reasonable search for the Requested Footage.

43. The Appeal Letter, coupled with the Appeal Response, discharged FLI's exhaustion requirements under FOIA.

44. Pursuant to the Appeal Response, ICE had an obligation to conduct new and/or modified searches and release any responsive records to Mr. Mannon, subject to exemptions.

45. By failing to do so within a reasonable time, ICE constructively denied the Request. This matter is therefore ripe for judicial review.

46. FLI brings this suit only after the government failed to respond to FLI's request to initiate mediation proceedings.

47. FLI initiated mediation on June 25, 2021 via email. ("Exhibit H").

48. After receiving no individualized response, FLI followed up on its request via email on July 23, 2021.

49. It also attempted to call the agency but was unable to reach a person. Only then did FLI resort to legal action.

**FIRST CAUSE OF ACTION**
(Violation of FOIA for failure to conduct a reasonable search)

50. FLI repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

51. The ICE is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore had an obligation to conduct a search reasonably calculated to uncover all records responsive to the requests.

52. ICE's failure to make timely available the requested records violates FOIA, 5 U.S.C. § 552 (a)(3)(A).

## REQUEST FOR RELIEF

WHEREFORE, FLI respectfully requests that this Court:

a. Declare that the records sought by the Request, as more particularly described above, are public records pursuant to 5 U.S.C. § 552, that the ICE failed to conduct a reasonable and diligent search for the records as required by 5 U.S.C. § 552(a)(3), and that the records must be disclosed;

b. Order the ICE to provide those records to Plaintiffs, including electronic copies of records stored in electronic format, within 20 business days of the Court's order;

c. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as authorized by FOIA; and

d. Grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 20, 2021

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP

By:      /s/*Debra L. Greenberger*

Andrew G. Celli, Jr.
Debra L. Greenberger
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

FIRST LOOK INSTITUTE, INC.

David S. Bralow
Victoria J. Noble*
114 5th Ave
New York, NY 10011-5604

*Attorneys for Plaintiffs*

\* *application for pro hac vice admission to be submitted*