# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER
VIVAKE PRASAD
NOEL R. LEÓN
NAIRUBY L. BECKLES
FRANCESCA COCUZZA

November 29, 2021

*Via ECF*

Honorable Barbara Moses
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20A
New York, NY 10007

    Re: *First Look Institute, Inc., et al v. U.S. Immigration and Customs Enforcement*, No. 21 Civ. 7052 (BCM)

Your Honor:

    This office represents Plaintiffs First Look Institute, Inc.—a non-profit news organization—and Travis Mannon—a video producer employed by First Look Institute, Inc.—(collectively, "FLI") in the above-captioned matter. Pursuant to the Court's November 23, 2021 (ECF 17), FLI writes in response to Defendant Immigration and Customs Enforcement's ("ICE") November 19, 2021 letter to the Court (ECF 16), in advance of the December 7, 2021 conference. Additionally, we request that Victoria Noble, an attorney for Plaintiffs[1] who is in Michigan, be permitted to appear telephonically for the December 7 conference.

    Plaintiffs object to ICE's proposed delayed production schedule. ICE proposes cutting a 59-minute video into twelve segments and producing one 5-minute segment per month over the course of a year. ICE's current proposal is its latest attempt to attempt to hide this video from public view: for 22 months, ICE did not produce this video to Plaintiffs. ICE originally informed FLI that it failed to locate any video responsive to Plaintiffs' public record request, explicitly stating it did not search the location the video was most likely to be—the ICE-owned detention facility. On administrative appeal, ICE ordered a new search, but never told FLI the

---

[1] Ms. Noble's motion to appear *pro hac vice* remains forthcoming as she is experiencing a delay in receiving a letter of good standing from one of the three jurisdictions where she is admitted.

fruits of such search, if any.  ECF 1-4.  ICE's first acknowledgement that the video even existed was in its October 7, 2021 Answer to FLI's Complaint. ECF 13.

Plaintiffs are additionally concerned that breaking up the video into twelve 5-minute segments risks compromising the viewability of the footage, which may result in altering the actual record and obscuring its content.

FLI has no doubt that ICE would prefer to prevent the public from seeing this footage for as long as possible.  The video portrays ICE attempting—twice unsuccessfully, once successfully—to insert a nasogastric tube into the nose of Ajay Kumar, a former ICE detainee on a hunger strike.  According to testimony of Mr. Kumar and an ICE doctor who observed the procedure before the U.S. District Court for the Western District of Texas, the first two times ICE attempted to insert the tube, it coiled in Mr. Kumar's esophagus, causing bleeding, swelling, and breathing difficulties.  *In Re: Kumar*, No. EP-19-MC-205-FM, Em. Mo. Hearing Transcript, ECF 31 at 10-11, 48-49, 62-65 (Aug. 19, 2019).  While the ICE medical staff attempted to perform the "excruciatingly painful[]" procedure on Mr. Kumar, staff members "laugh[ed] and smil[ed]" and seemed to taunt the other hunger strikers in the room, "as if telling them that now next is going to be your turn."  *Id.* at 64.  The public has a right to see this footage as soon as possible, whether ICE wants them to or not.  Excessive delays are "'tantamount to denial.'"  *ACLU v. DoD*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (quoting H. Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News, 6267, 6271).  Mr. Kumar has waived any privacy concerns.

### I. EXCESSIVE DELAY

ICE should not need an entire year to process just 59 minutes of video.  ICE claims it needs to blur faces and badges to protect its employees' privacy (an exemption which Plaintiffs reserve the right to challenge on the merits).  ICE then asserts that blurring will take nearly a year because it has only a single license for the software it will use to do this blurring (Visual Labs) and it has tasked a single employee who has a myriad of other responsibilities; ICE states the software is "riddled with technical problems," so the employee must "redact each frame individually."  ECF 16.  ICE's failure to invest the necessary resources to respond to FOIA requests for videos is no excuse for this grossly delayed production schedule.

As an initial matter, ICE's factual assertions seem dubious at best. Public records reflect that ICE paid $17,500 to Visual Labs for "FOIA redaction software licenses" this year,[2] and Visual Labs has confirmed that $17,500 is the cost for ten licenses, not one.[3]  Additionally, government procurement data evidence that the agency has access to another video-editing application: Adobe Creative Cloud, a suite of applications that includes Premiere Pro, an industry-standard professional video-editing program.[4]  Premiere Pro has a feature that

---

[2] USA Spending, "Purchase Order (PO) PIID 70CTD020P00000009," https://www.usaspending.gov/award/CONT_AWD_70CTD020P00000009_7012_-NONE-_-NONE-.

[3] *See* Email from Alexander Popof to Victoria Noble (Nov. 27, 2021) and Email from Victoria Noble to Visual Labs, Inc. (Nov. 27, 2021) ("Exhibit A").  Mr. Popof's response references two communications from Ms. Noble; the first was through a webform which did not provide Ms. Noble a copy.

[4] Multiple components of the U.S. Department of Homeland Security, including ICE, have licensed Adobe Creative

automatically blurs an object, such as a face or badge number, as it moves throughout the video.[5] If the Visual Labs' software is as problematic as ICE suggests, ICE could use Premiere Pro. Finally, ICE's assertion that it has been forced to "manually review and redact 9,000 frames in the first five-minute segment" because "many of the automatic blurs were wrong, such as by blurring a face in one frame but missing it the next[]" is self-contradictory and incorrect. ECF 16. Mistakes in some of the frames would require ICE to review every frame to ensure that exempt information is redacted, but ICE would only need to manually redact those limited frames containing mistakes—not every single one. Claiming otherwise appears to be an attempt by the agency to support its exaggerated claims about the time it needs to process the video.

If ICE maintains that it cannot process and produce the video within a reasonable time using Visual Labs, the Court can and should order the agency to do so using Premiere Pro. Courts have ordered federal agencies to acquire video-editing software or use software licensed by sister components of a common parent agency to process videos requested under FOIA. In *Stevens v. DHS*, the court ordered the DHS Office of the Inspector General ("OIG") to use Adobe Create Suite to redact a video over DHS' "litany of reasons why OIG cannot [do so], including that OIG's license for use of the Creative Suite software is limited to 'developing eLearning applications[]'… [and] that no one in OIG has the experience or training to use the software." No. 13 C 03382, 2014 U.S. Dist. LEXIS 157086, at *35-*36 (N.D. Ill. Nov. 4, 2014). *Stevens* dismissed these objections as efforts "to hide behind the bureaucratic divisions of DHS to avoid complying with FOIA's 'pro disclosure' mandate[]…[and] "order[ed] the OIG FOIA Office to consult with employees at DHS headquarters familiar with Adobe's Creative Suite video editing software and….produce a DVD that properly redacts protected information under FOIA[.]" *Id.* at *36-*37. Similarly, in *Stahl v. DOJ*, the court held that FOIA proscribed withholding an entire video on the grounds that part of the video was exempt, rejecting the DOJ's claim that it lacked video-editing software, reasoning that "if acquiring this software could stand in the way of complying FOIA, no video would ever be disclosed." No. 19-cv-4142 (BMC), 2021 U.S. Dist. LEXIS 58871, at *16-*18 (E.D.N.Y. Mar. 26, 2021).

---

Cloud under a Blanket Purchase Agreement with Emergent, LLC. *See* USASpending.gov, "Blanket Purchase Agreement (BPA) PIID 70RTAC19A00000002," https://www.usaspending.gov/award/CONT_IDV_70RTAC19A00000002_7001; USASpending.gov, "Blanket Purchase Agreement (BPA) Call PIID 70CTD021FC0000056," https://www.usaspending.gov/award/CONT_AWD_70CTD021FC0000056_7012_70RTAC19A00000002_7001; USASpending.gov, "Blanket Purchase Agreement (BPA) Call PIID 70CMSD20FC0000026," https://www.usaspending.gov/award/CONT_AWD_70CMSD20FC0000026_7012_70RTAC19A00000002_7001; USASpending.gov, "Blanket Purchase Agreement (BPA) Call PIID 70LGLY21FSSB00072," https://www.usaspending.gov/award/CONT_AWD_70LGLY21FSSB00072_7015_70RTAC19A00000002_7001.

If ICE truly cannot use Adobe Creative Cloud under a license already procured by ICE, DHS, or another DHS component, it can easily procure an additional license under the Blanket Purchase Agreement, a contract between DHS and Emergent, LLC designed to "speed up the process of repeated purchases[]" and make them "easy for both sides." USASpending.gov, "Glossary: Blanket Purchase Agreement (BPA)," https://www.usaspending.gov/award/CONT_IDV_70RTAC19A00000002_7001/?glossary=blanket-purchase-agreement-bpa.

[5] *See* Adobe, "Masking And Tracking," (July 1, 2021) https://helpx.adobe.com/premiere-pro/using/masking-tracking.html.

Given the availability of superior software, ICE should not be allowed to delay production of the requested footage for up to a year simply because the inferior program it elected to use is, as ICE claims, "riddled with technical problems." If ICE insists upon using Visual Labs to redact the video, the Court should still order it to do so within one month, as Plaintiffs originally proposed in the parties' October 19, 2021 joint letter (ECF 14). ICE's letter makes clear that the single employee working on this has a litany of other tasks that take priority—including "productions in other cases pursuant to court-ordered deadlines." (ECF 16). If this Court ordered ICE to produce the footage in a month as Plaintiffs request, ICE will have to ensure its employees meet that deadline.

For the reasons outlined above, ICE's proposal to delay production of the requested footage for up to one *additional* year is inappropriate. The Court need not and should not indulge ICE's efforts to shield itself from public scrutiny. The agency has numerous options available to it, such as processing the video using Premiere Pro. Alternately, ICE could outsource redaction of this video to a professional video editor subject to a non-disclosure agreement. If ICE is truly unable to process a mere 59-minutes of footage in less than 12 months—and in light of ICE's dilatory handling of this request—such an order is necessary. Because FLI feels so strongly that the public needs to see the footage at issue, it is willing to pay up to $1,000 for a third-party to redact the video.

## II. SEGMENTING THE VIDEO FOOTAGE

ICE's proposal to break up the 59-minute video into 12 segments of approximately 5-minutes in length needlessly risks compromising the quality of the footage. Once FLI obtains the series of 5- minutes segments from ICE, video producers will need to reconstruct the original, unsegmented footage by pasting the segments together, essentially reconstituting the public record in its original form. Unless the frames match up perfectly or nearly perfectly, this will severely compromise the authenticity of the record and, perhaps, obfuscate information that should be public. ICE should not be breaking the video into smaller segments at all.

There is no technological reason why ICE would need to break up the video in order to process it. Both Adobe Creative Cloud and Visual Labs FastRedact can accommodate 59-minute film clips.[6] If the Court permits ICE to break up the video in order to process it within a reasonable time, ICE must merge the video back together so that on each production date Plaintiffs receive a single file of all video redacted to date and on the final production date ICE must produce a single 59-minute redacted video. ICE should also preserve the original video in its entirety (i.e., unsegmented video) for the duration of this lawsuit in case disputes or problems arise concerning the segments.

We thank the Court for its consideration of this matter and look forward to discussing further on December 7.

---

[6] Visual Labs FastRedaction supports files up to 5 gigabytes ("GB"). The 5-minute segment ICE produced was 82.8 megabytes ("MB"). If the other 11 segments are a similar size, the entire 59-minute video would be approximately 1 GB, well below the maximum file size for this software. Adobe Premiere Pro does not have a maximum file size.

        Sincerely,

        /s/

        Debra L. Greenberger

        FIRST LOOK INSTITUTE, INC.
        David S. Bralow
        Victoria J. Noble, *pro hac vice application forthcoming*

        *Counsel for Travis Mannon and First Look Institute, Inc.*

c.    Allison Rovner, counsel for ICE, *by ECF*